O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAMES D. DIBDIN, | ) | Case No. CV 12-00206 DDP (PLAx) |
| | ) | |
| Plaintiff, | ) | **ORDER RE: DEFENDANTS' MOTIONS TO** |
| | ) | **DISMISS FOR LACK OF JURISDICTION** |
| v. | ) | **AND IN THE ALTERNATIVE, BASED** |
| | ) | **UPON _FORUM NON CONVENIENS_** |
| SOUTH TYNESIDE NHS | ) | |
| HEALTHCARE TRUST, a United | ) | [Docket Nos. 46, 48, 49] |
| Kingdom Foundation Trust, | ) | |
| ALAN RODGERS, an individual; | ) | |
| RICHARD ELLIS, an | ) | |
| individual; LORRAINE | ) | |
| LAMBERG, an individual; | ) | |
| FIELD, FISHER, WATERHOUSE, a | ) | |
| United Kingdom LLP; SARAH | ) | |
| ELLSON, an individual; | ) | |
| ANDREW BAUM, an individual; | ) | |
| REBECCA POULET, an | ) | |
| individual; RYAN SOLICTORS, | ) | |
| a United Kingdom LLP; | ) | |
| MICHAEL RYAN, an individual; | ) | |
| MARTIN FORDE, an individual; | ) | |
| ELAINE MEEHAN, an | ) | |
| individual; JOHN MURPHY, an | ) | |
| individual; REBECCA | ) | |
| TOWNSLEY, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

On June 12, 2012, James Dibdin ("Plaintiff") filed his second

amended complaint against South Tyneside NHS Foundation; Alan

Rodgers; Richard Ellis; Lorraine Lambert; Field, Fish Waterhouse,

1  LLP; Sarah Ellson, Andrew Baum; Rebecca Poulet; Ryan Solicitors

2  LLP; Michael Ryan; Martin Forde; Elaine Meehan; John Murphy;

3  Rebecca Townsley; and Ceri Floyd ("Defendants"). (See generally

4  Second Amended Complaint ("SAC").) The complaint contains ten

5  claims, some alleging liability for all Defendants.

6         Presently before the court is Defendants' motion to dismiss

7  for Lack of Personal Jurisdiction, *Forum non Conveniens*, and Lack

8  of Subject Matter Jurisdiction.  Since this case involves multiple

9  claims, multiple possible immunities, and multiple defendants with

10 varying connections to California, the court will only address the

11 *forum non conveniens* issue. As will be discussed infra, this case

12 concerns events and hearings occurring almost entirely in England.

13 Since it is immediately apparent that this case should be litigated

14 in England, the Court GRANTS Defendants' motion to dismiss on

15 grounds of *forum non conveniens*.

16 **I. Background**

17        Plaintiff is a California resident who is a licensed physician

18 in this state. (SAC ¶ 5.) Defendants include individuals (all of

19 whom reside in England), two solicitor firms (which are

20 headquartered and have their principle place of business in

21 England), and South Tyneside Hospital (which is part of the United

22 Kingdom government's National Health Service (NHS)).  (SAC ¶¶, 6-

23 20.)  Plaintiff's claims arise from his employment as a consultant

24 pathologist at South Tyneside, the NHS hospital.  (SAC ¶¶ 22-29.)

25 Plaintiff alleges that during his employment another consultant

26 pathologist, Dr. John Obafunwa, authored reports under Plaintiff's

27 name, and that these reports had a 70% error rate.  (Id. ¶ 28.)

28 During a review of Plaintiff's work, South Tyneside Hospital

1 | attributed these reports to Plaintiff, despite allegedly knowing

2 | that Dr. Obafunwa was the true author.  (Id.)  South Tyneside

3 | Hospital allegedly concealed its knowledge of the reports'

4 | authorship, and Plaintiff did not discover what Dr. Obafunwa had

5 | done until 2009.  (Id. ¶ 29.)  South Tyneside Hospital filed a

6 | complaint against Plaintiff with the General Medical Council in the

7 | UK.  (Id.)  Two hearings were held to decide Plaintiff's fitness to

8 | practice medicine.  (Id.)  Plaintiff's license was revoked

9 | allegedly as a result of Defendants "directing, controlling,

10 | engaging in, ratifying, authorizing, or acquiescing in [] wrongful

11 | acts and omissions" related to Plaintiff's employment, during these

12 | hearings.  (Id. ¶¶ 29, 37-38.)  Not only has the revocation damaged

13 | Plaintiff's reputation, Defendants have also allegedly attempted to

14 | get the Medical Board of California to discipline Plaintiff

15 | further, and they have continued to contact potential employers

16 | about Plaintiff's suspension in the UK.  (Id. ¶ 68, 96.)

**II. The Court may Dismiss on Grounds of *Forum non Conveniens***

**Without Engaging in Other Threshold Issues.**

A court has authority to decide a defendant's *forum non conveniens* plea before deciding any other threshold matter:

> [A] district court has discretion to respond at once to a defendant's *forum non conveniens* plea, and need not take up first any other threshold objection. In particular, a court need not resolve whether it has authority to adjudicate the cause (subject-matter jurisdiction) or personal jurisdiction over the defendant if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case.

Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 425 (2007). As the Ninth Circuit has recognized,"the Supreme Court offered the lower courts a practical mechanism for resolving a case that would ultimately be dismissed." Provincial Gov't of Marinduque

1  <u>v. Placer Dome, Inc.</u>, 582 F.3d 1083, 1088 (9th Cir. 2009).  Dismissal

2  without consideration of personal jurisdiction or subject matter

3  jurisdiction is especially proper when those issues are difficult to

4  determine, and when the case for dismissal on *forum non conveniens*

5  grounds is clear.  <u>Sinochem</u>, 549 U.S. at 436.

6        As analyzed <u>infra</u>, it is clear to this court that this case

7  should be dismissed on *forum non conveniens*. Thus, concerns for

8  "judicial economy" weigh heavily in favor of immediate dismissal. <u>See</u>

9  <u>id.</u> at 432. Additionally, subject matter and personal jurisdiction are

10 difficult to decide in this case. The court need not go into detail

11 on these issues, because doing so would betray the concern for

12 judicial resources that underlie <u>Sinochem</u>. 549 U.S. at 432. Some

13 explanation, though is warranted.

14        Regarding personal jurisdiction, there are fifteen Defendants.

15 Some are individual defendants, who are employed by different

16 organizations, and some are organizations (e.g. a government hospital

17 and a law firm).  (SAC ¶¶, 6-20.)  First, the Defendants have varying

18 connections to California. Some have never been to the state.  (<u>See</u>

19 <u>e.g.</u>, Rodgers Decl. ¶ 3.) One of the Defendants is a law firm with an

20 office in this state.  (Reply Memorandum for Defendants Field Fisher

21 Waterhouse LLP, Sarah Ellson, Andrew Baum, Ryan Solicitors, Michael

22 Ryan, Elaine Meehan, Ceri Floyd, and Rebecca Townsley at 9:13-18.)

23 Defendants South Tyneside Hospital and Alan Rodgers are alleged to

24 have recruited Plaintiff from California, but no analogous allegation

25 is made against the Defendants unaffiliated with the hospital. (SAC

26 ¶ 7).  Second, it is a close call whether Plaintiff has made only

27 conclusory or insufficiently specific allegations about many

28 Defendants' contacts with California.  <u>Swartz v. KPMG LLP</u>, 476 F.3d

4

1    756, 766 (9th Cir. 2007) (holding that "mere bare bones assertions of
2    minimum contacts with the forum or legal conclusions unsupported by
3    specific factual allegations will not satisfy a plaintiff's pleading
4    burden" (internal quotations omitted)). Plaintiff alleges that
5    Defendants have tried to contact the Medical Board of California to
6    seek further disciplinary action against him. (SAC ¶ 96). Plaintiff's
7    complaint, though, is unclear whether the Defendants actually did
8    contact the Board, and what actions constitute Defendants' attempted
9    contact. Likewise, Plaintiff claims that Defendants have contacted
10   his potential employers to impugn his reputation. (See id.) It is
11   unclear which employers Plaintiff references, and whether they are
12   located in California. For these reasons, the issue of personal
13   jurisdiction is nebulous.

14        Deciding subject matter jurisdiction would likewise be an
15   extensive undertaking. Some Defendants are claiming full liability
16   protection under the sovereign immunities act.  Some are claiming
17   protection under the litigation privilege. Likewise, defendants
18   Rebecca Poulet and Martin Forde assert that each of Plaintiff's eight
19   claims against them are factually insufficient. In light of the
20   different privileges that might be available to different Defendants,
21   and the number of claims at issue here, engaging in the "arduous
22   inquiry" of subject matter jurisdiction in this case would be an
23   inappropriate use of this court's resources. Sinochem, 549 U.S. at
24   436.

25   **III. Analysis**

26        The doctrine of *forum non conveniens* permits discretionary
27   dismissals on a case by case basis. Piper Aircraft Co. v. Reyno,
28   454 U.S. 235, 249 (1981).  The party moving for *forum non*

1    *conveniens* dismissal must demonstrate two things: (1) the existence

2    of an adequate alternative forum; and (2) that the balance of

3    relevant private and public interest factors favors dismissal.

4    Dole Food Co. v. Watts, 303 F.3d 1104, 1117 (9th Cir. 2002).

5         **A. Adequate Alternative Forum**

6         A foreign forum is generally adequate if the defendant is

7    amenable to process and that forum offers a remedy for the alleged

8    wrongdoing.  Piper Aircraft Co., 454 U.S. at 254 n. 22.  Although a

9    defendant bears the burden of demonstrating an adequate forum, the

10   test is "easy to pass." Tuazon v. R.J. Reynolds Tobacco Co., 433

11   F.3d 1163, 1178 (9th Cir. 2006).  A foreign forum may still be

12   adequate even if it does not provide the same remedies or recognize

13   the exact same causes of action as an American court.  See, e.g.,

14   Lockman Foundation v. Evangelical Alliance Mission, 930 F.2d 764,

15   768 (9th Cir. 1991) (finding forum adequate when it provided

16   sufficient tort and contract claims, even though Plaintiff's RICO

17   claims were unavailable).  Procedural differences between a U.S.

18   and a foreign court, even as to substantive rights, are not

19   sufficient grounds to deem the foreign forum inadequate.  Id. at

20   768.

21        When the plaintiff is a United States citizen or resident, the

22   plaintiff's choice of forum should be accorded significant

23   deference.  Piper Aircraft, 454 U.S. at 257.  However, an American

24   plaintiff's presence "is not in and of itself sufficient to bar a

25   district court from dismissing a case on the ground of *forum non*

26   *conveniens*."  Cheng v. Boeing Co., 708 F.2d 1406, 1411 (9th Cir.

27   1983). A litigant who then argues against the forum's adequacy

28   "must make a powerful showing."  Tuazon, 433 F.3d 1163, 1179 (9th

6

1  Cir. 2006).   There is no reason to think England would be

2  unsuitable. Since Defendants reside there, "there is no evidence to

3  suggest that [they] . . . would not be subject to process." <u>See</u>

4  <u>Tel. Sys. Int'l, Inc. v. Network Telecom PLC</u>, 303 F. Supp. 2d 377,

5  381 (S.D.N.Y. 2003).   This court is not aware of any Ninth Circuit

6  case that has found England inadequate, but there are a number

7  finding England adequate. <u>See</u>, <u>e.g.</u>, <u>Am. Home Assurance Co. v. TGL</u>

8  <u>Container Lines, Ltd.</u>, 347 F. Supp. 2d 749, 766 (N.D. Cal. 2004);

9  <u>Neuralstem, Inc. v. ReNeuron, Ltd.</u>, 365 F. App'x 770, 771 (9th Cir.

10  2010) (unpublished).   Plaintiff does not dispute that Defendants

11  would be subject to service in England, nor does he dispute that

12  English courts would offer adequate remedies.   In fact a number of

13  American courts have found that English law permits recovery on

14  many of the claims Plaintiff asserts, or on claims analogous to

15  Plaintiff's. <u>See</u>, <u>e.g.</u>, <u>Itoba Ltd. v. LEP Grp. PLC</u>, 930 F. Supp.

16  36, 44 (D. Conn. 1996) (deceit); <u>Denmark v. Tzimas</u>, 871 F. Supp.

17  261, 270 (E.D. La. 1994)(tortious interference with business

18  relationships and defamation); <u>Pik v. Chan</u>, 08 CIV. 10659 LTSGEL,

19  2010 WL 2653657 (S.D.N.Y. July 2, 2010) (intentional infliction of

20  emotional distress); <u>Lexington Ins. Co. v. Forrest</u>, 263 F. Supp. 2d

21  986, 999 (E.D. Pa. 2003) (fraudulent inducement).

22      Plaintiff only expressed concern that an English court might

23  be biased in favor of the Defendants, since one is a government

24  hospital.   Plaintiff should take heart, however, that American

25  courts have the highest respect for the fair-mindedness of their

26  English counterparts. <u>See</u>, <u>e.g.</u>, <u>Wiwa v. Royal Dutch Petroleum Co.</u>,

27  226 F.3d 88, 101 (2d Cir. 2000) ("We regard the British courts as

28  exemplary in their fairness and commitment to the rule of law.").

1 **B. Private Factors**

2    The relevant private interest factors are: (1) the residence

3 of the parties and the witnesses; (2) the forum's convenience to

4 the litigants; (3) access to physical evidence and other sources of

5 proof; (4) whether unwilling witnesses can be compelled to testify;

6 (5) the cost of bringing witnesses to trial; (6) the enforceability

7 of the judgment and; (7) all other practical problems that make

8 trial of a case easy, expeditious and expensive.  Lueck v.

9 Sunstrand Corp., 236 F.3d 1137, 1145 (9th Cir. 2001). "[A] court's

10 focus should not rest on the number of witnesses or quantity of

11 evidence in each locale. Rather, a court should evaluate 'the

12 materiality and importance of the anticipated evidence and

13 witnesses' testimony and then determine their accessibility and

14 convenience to the forum.'" Id. at 1146 (citations omitted).  For

15 the reasons analyzed infra, the private factors weigh heavily in

16 favor of dismissal.

17        **1. Residence of the Parties and Witnesses**

18    Plaintiff is a resident of California.  (SAC ¶ 5.)  All twelve

19 individual Defendants are residents of England.  (Id. ¶¶ 6-20.)

20 Regarding the remaining Defendants, the two solicitor firms and the

21 hospital, all are headquartered and have their principle place of

22 business in England. (Id.)  As for witnesses, Plaintiff's brief

23 claims that there are key expert witnesses who must testify.

24 (Plaintiff's Opp'n to Defendants' Field Fisher Waterhouse LLP, et

25 al.'s Motion to Dismiss ("Opp'n")at 16:22-23.)  However, Plaintiff

26 does not identify who these experts are, where they live, or

27 (crucially) why their testimony is important. In contrast, the

28 testimony of every Defendant is likely to be relevant.  Plaintiff

8

1  accuses all Defendants of conspiring to fraudulently present false

2  evidence against Plaintiff in the hearings that led to the

3  revocation of his medical license. (Id. ¶ 37.)  All of them have

4  also allegedly continued to propagate these falsehoods in an

5  attempt to retaliate against Plaintiff. (Id. ¶ 38.)  According to

6  Plaintiff, then, all Defendants have actively harmed him in a

7  myriad of ongoing, deceptive ways.  The testimony of each of them

8  will be crucial to resolving Plaintiff's claims.  Accordingly, this

9  factor weighs heavily in favor of dismissal.

10         **2. The Forum's Convenience to the Litigants**

11       Plaintiff does not claim that litigating in England would be

12  inconvenient. He simply says that, "[i]t is easy for [him] to

13  litigate his claims [in California]." (Opp'n at 16:18-19.)  In

14  fact, less than two months ago, Plaintiff executed a declaration

15  for this case in the United Kingdom.  (Dibdin Decl.)  In contrast,

16  every Defendant would have to travel to California for this case.

17  The individual Defendants are all employed in England.  (SAC ¶¶ 6-

18  20.)  Many of them have essentially no connection to this state.

19  (See generally Rodgers Decl.; Ellis Decl.; Lambert Decl.; Robson

20  Decl.)  Accordingly, this factor also weighs in Defendants' favor.

21         **3. Access to Physical Evidence and Other Sources of Proof**

22       There is no dispute that the events giving rise to this case

23  almost exclusively occurred in England.  Plaintiff was employed in

24  England; the reports falsely written in his name occurred in

25  England; the hearings where fraudulent evidence was allegedly

26  presented against him took place in England. (See generally SAC.)

27  Access to key documents may become an issue if the case were to

28  continue in California, because documents relating to Plaintiff's

1  General Medical Council (GMC) fitness hearing are in the U.K., and

2  in the possession of that organization–a non-party to this suit.

3  (See Townsley Decl. ¶ 8; Floyd Decl. ¶ 8.)  This court does not

4  have the authority to order production of these documents.  See

5  Lueck, 236 F.3d at 1146-47. This factor weighs strongly in favor of

6  dismissal.

7               **4. Whether Unwilling Witnesses Could Be Compelled to**

8                  **Testify**

9       Neither party has identified any unwilling witnesses, so this

10  factor is of minimal importance.  However, the court notes that the

11  GMC is not a party to this case.  The GMC presided over Plaintiff's

12  fitness hearing, and it retains documents related to that hearing.

13  It is possible that a non-party member of the GMC may need to

14  testify in this case (perhaps to authenticate documents related to

15  Plaintiff's fitness hearing).  However, the court would not have

16  the power to make such individuals testify. See Lueck, 236 F.3d at

17  1146-47.  This factor is of minimum importance to the court, but it

18  does weigh in favor of dismissal.

19               **5. The Cost of Bringing Witnesses to Trial**

20       As discussed supra, if Plaintiff's case were to continue in

21  California, all Defendants would likely need to travel to the state

22  to testify.  Plaintiff, however, is just one person, who, beyond

23  mere speculation that some unidentified expert will need to

24  testify, has identified no witnesses that would need to travel to

25  England. The cost of bringing Defendants to the United States will

26  be greater than transporting Plaintiff to England, so this factor

27  weighs in favor of dismissal. Harp v. Airblue Ltd., 10-01780 AG

28  (RZx), 2012 WL 3038599, at *7  (C.D. Cal. Mar. 28, 2012).

**6. Enforceability of the Judgment**

Neither party claims that an American court's or and English court's judgment would be unenforceable.  Therefore, this factor is neutral.  <u>Id.</u>

**7. All other Practical Problems that Make Trial of a**
**Case Easy, Expeditious and Expensive**

The parties have identified no additional practical problems. Therefore, this factor is neutral.

**8. Private Factors Conclusion**

Most of the private factors weigh heavily in favor of dismissal. None of them weigh in Plaintiff's favor.  Generally, the private factors will weigh in favor of a foreign forum when essentially all the events giving rise to a suit occur there. <u>See</u>, <u>e.g.</u>, <u>Loya v. Starwood Hotels & Resorts Worldwide, Inc.</u>, 583 F.3d 656, 664-65 (9th Cir. 2009); <u>Leetsch v. Freedman</u>, 260 F.3d 1100, 1104-05 (9th Cir. 2001).  For reasons analyzed <u>supra</u>, the events giving rise to this suit occurred in England, and this court accordingly finds that the private factors strongly favor dismissal.

**C. Public Factors**

The relevant public factors include (1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court and; (5) the costs of resolving a dispute unrelated to this forum.  <u>Lueck</u>, 236 F.3d at 1147.

**1. Local Interests**

"There is a local interest in having localized controversies decided at home."  <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 509

1   (1947).   In this case, the interests of England greatly outweigh

2   those of a court sitting in California. The word "California" only

3   appears three time in Plaintiff's 148 paragraph complaint.  (SAC ¶¶

4   5, 89,86.)  Plaintiff's claims, though, are too vague to be very

5   helpful to him.  Beyond Plaintiff's residency, California seems to

6   be relevant because of vague allegations that Defendants tried to

7   contact the state's Medical Board to seek disciplinary action

8   against him, but Plaintiff does not allege that Defendants were

9   successful in their attempt to make contact.  (Id. ¶ 96.)

10  Additionally, Plaintiff alleges that Defendants continue to report

11  Plaintiff's suspension to potential employers, but Plaintiff does

12  not reveal the number or identify of these employers, nor does he

13  explicitly allege that they are located in California.

14      California's greatest interest lies in whether Defendants

15  actually manufactured false allegations that not only led to the

16  suspension of a California resident's license to practice in

17  England but also put a black mark on his reputation. However,

18  England is the better place to adjudicate this issue.  The hearing

19  occurred there, as did the events that gave rise to them. The court

20  therefore finds that California has a weak interest in this case.

21      By contrast, England has a very strong interest in this case

22  for two reasons. First, the events giving rise to Plaintiff's

23  claims occurred there. See Gilbert, 330 U.S. at 509.  Second,

24  Plaintiff's claims challenge the integrity of two U.K. governmental

25  institutions, the NHS and GMC, that are integral to that country's

26  healthcare system.  If corruption within these organizations is so

27  rife that its hospital administrators, doctors, and lawyers could

28  fabricate a sham hearing, then England has a tremendous interest in

1 | ensuring that justice is done and this corruption rooted out.

2 | **2. The Court's Familiarity with the Governing Law**

3 | Since England's interests are greater than California's,

4 | English law is likely govern many of Plaintiff's claims. <u>See</u> <u>Harp</u>,

5 | 2012 WL 3038599, at *8 (C.D. Cal. Mar. 28, 2012) (citing <u>Dole Food</u>

6 | <u>Co., Inc. v. Watts</u>, 303 F.3d 1104, 1119 (9th Cir. 2002) (holding

7 | that in resolving a conflict of law, the law of the sovereign with

8 | the greater interest in having its law applied controls.) The

9 | likelihood of applying English law weighs in favor of dismissal.

10 | <u>Lueck</u>, 236 F.3d at 1144 (holding that the doctrine of *forum non*

11 | *conveniens* was designed in part to help courts avoid conducting

12 | complex exercises in comparative law) (internal quotations and

13 | citations omitted); <u>Magnin v. Teledyne Cont'l Motors</u>, 91 F.3d 1424,

14 | 1430 (11th Cir. 1996) ("Far better that the case be tried in France

15 | by one or more jurists as familiar with French law as we are

16 | unfamiliar with it.").

17 | **3. Burden on Local Courts and Juries, Costs in Resolving**

18 | **the Dispute, and Congestion in the Courts**

19 | "The burden on local courts and juries unconnected to the case

20 | and the costs of resolving a dispute unrelated to the forum also

21 | favor dismissal." <u>Vivendi SA v. T-Mobile USA Inc.</u>, 586 F.3d 689,

22 | 696 (9th Cir. 2009). This case turns on events and hearings that

23 | occurred in England. That forum should bear the burden and costs of

24 | Plaintiff's suit. The Central District of California has a very

25 | demanding docket, with many thousands of cases brought each year.

26 | The District also faces a number of unfilled judicial vacancies.

27 | England's resources are more appropriate for resolving this case.

28 | **4. Public Factors Conclusion**

1       As discussed <u>supra</u>, Every public factor weighs heavily in

2   favor of dismissal.

3   **IV Conclusion**

4       England is an adequate forum.  Both the public and private

5   factors weigh heavily in favor of litigating Plaintiff's claims

6   there.  The court, therefore, GRANTS Defendants' Motion to Dismiss

7   this case on the grounds of *forum non conveniens*.

8

9   IT IS SO ORDERED.

10

11

12  Dated: January 29, 2013

                                  DEAN D. PREGERSON

13                                    United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14